IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 5, 2019

## COREY DEMONN SCOTT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
No. C-17-111     Donald H. Allen, Judge

### No. W2018-01126-CCA-R3-PC

The Petitioner, Corey Demonn Scott, appeals from the Madison County Circuit Court's denial of his petition for post-conviction relief from his 2016 guilty pleas to second degree murder and to vandalism, for which he is serving an effective eighteen-year sentence. The Petitioner contends that he received the ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Corey Demonn Scott.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody Pickens, District Attorney General; and Alfred Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises from the Petitioner's September 12, 2016 negotiated guilty pleas to second degree murder and to vandalism in exchange for an effective eighteen-year sentence at 100% service. Two counts of vandalism and one count of tampering with evidence were dismissed pursuant to the plea agreement.

### Guilty Plea Proceedings

At the guilty plea hearing, the State's recitation of the facts related to the second degree murder conviction was as follows:

[O]n or about January the 26th of 2015 . . . the defendant unlawfully and knowingly killed Harvey Gandy in violation of Tennessee Code Annotate[d] Section 39-13-210.

. . . . Officers were dispatched to a shooting victim. They found a black male later identified as Harvey Gandy in his apartment. He was sitting on the sofa/couch with gunshot wounds to the upper torso. The medical examiner issued a report that outlined two gunshot wounds to the chest. Manner of death was homicide. The circumstances of death were shot by another individual.

Officers . . . were called there by Mr. Gandy's girlfriend . . . . She said that . . . she was at Mr. Gandy's apartment earlier in the day. She saw . . . Mr. Gandy[] with the defendant . . . earlier in the day together at the apartment. She said that she tried to contact [Mr. Gandy] . . . around 3:00 that afternoon. She could not get in touch with him. She had gone by the apartment and saw someone in the house and she thought [Mr. Gandy] was sleeping. It wasn't until around 6:00 p.m. that she went into the apartment and she realized [Mr. Gandy] was shot. At the time officers interviewed the defendant . . . [he] denied having anything to do with the murder. He . . . admitted that he was with [Mr. Gandy] that day[] but had left at approximately 1:00 p.m. that day.

Then in July of 2015 about six months later, . . . Rocky White was interviewed [and stated that] . . . "[a]t the beginning of May of 2015, [the defendant] and I got a room at the Scottish Inn on North Highland. [The defendant] paid for the room and it was in his name. While we were in the room, [the defendant] told me that he was having nightmares. [The defendant said the s--- had been f------ with his head. He said it was the murder . . . . He said he got into an argument with the guy over some rent money. They lived together in the apartment. He said the argument got heated and he pulled out his gun and shot him. [The defendant] told me that he took his money and his dope and left the apartment. . . . The guy's girlfriend told police that [the defendant] killed him, but they let him go because she was not there when it happened. . . ."

. . . .

Officers were able to go back to that hotel and confirm that the defendant did, in fact, rent a room in the first part of May for a couple of days at the Scottish Inn. At this time officers issued an arrest warrant for the defendant and he did make certain admissions.

The Petitioner's police statement reflected that

> [o]n that day I was walking to go find a job because that night before my mom was fussing about putting me out. I haven't seen Harvey for like two weeks because we had money issues. I owed him $1000. When I was walking he seen me while he was out walking his dog and asked me to walk to the store with him. When we was leaving the store, he told me to come smoke a blunt with him. While we were smoking he mentioned something about the money issue we had. He was like where's my money at? You've been owing me for two weeks now. I told him to give me a few minutes . . . to pay you. He said hell no, b---- a-- n-----, you better have my s--- or I'm going to kill your a--. He had his gun laying on the table and he grabbed it and then I grabbed him. We was fighting over the gun and the gun fell on the ground. He was rushing towards me. I seen the gun on the ground and I grabbed it and I fired because I was afraid for my life. I didn't know what to do after that so I left and I threw the 380 pistol in the pond . . . .

However, the prosecutor stated that the evidence showed that Mr. Gandy was found lying on the couch.

The State's recitation of the facts related to the vandalism conviction was as follows:

> [O]n or about September the 13th . . . the defendant knowingly caused damage or destruction to property in the Madison County Jail over the value of $500. This was a series of incidents. The first one occurred that he is pleading to was on September 13th, 2015 where the defendant vandalized a fire compression system or sprinkler . . . . Video surveillance recorded an inmate identified as the defendant . . . standing on the table and breaking the sprinkler head. The damage . . . is approximately $645.

> As part of the proof, the State has agreed to let him plead to one count. There's actually three separate counts. One occurred on September 13th, 2015. A second incident also [damaged a] sprinkler head occurred on September 14th, 2015 and a third incident occurred on September 16th, 2015. The damage to the sprinkler was valued in each incident of $645.

The Petitioner told the trial court that he understood the plea agreement, that he and counsel had reviewed it, and that he had not consumed any substance that would impair his judgment. The Petitioner understood that he had rights to a fair and public trial, to counsel, to confront and cross-examine witnesses, to compel witnesses to appear in court, to appeal his convictions after a trial, and against self-incrimination. The Petitioner understood that by pleading guilty he was admitting his guilt to each offense and that he was pleading guilty freely and voluntarily. He told the court that the State's recitations of the facts for each offense were "substantially correct." He admitted shooting the victim twice in the chest and damaging property at the jail. He apologized to the victim's family and asked for forgiveness. He denied that he had been pressured or forced to plead guilty and said that pleading guilty was the "best course of action." He said he was satisfied with counsel's representation and denied counsel had done or said anything that the Petitioner needed to address with the court. The Petitioner understood the range of punishment for each offense and the 100% service requirement of his eighteen-year sentence. When provided the opportunity to ask questions, the Petitioner only inquired about when his placement in the Department of Correction would occur.

On April 26, 2017, the Petitioner filed a post-conviction petition, alleging, in relevant part, that he received the ineffective assistance of counsel.

**Post-Conviction Proceedings**

The Petitioner testified that he and defense counsel met approximately four or five times before the guilty plea hearing. The Petitioner said that he asked counsel to file various pretrial motions, that counsel filed motions related to the Petitioner's police statement and to a mental health evaluation, and that counsel did not file the remaining motions the Petitioner had requested. He said that counsel did not file a motion to suppress evidence, a motion to obtain transcripts of the preliminary hearing and witness statements, a motion related to his *Miranda* rights, and a motion to require the State to identify the confidential informant. The Petitioner said that counsel told him the motions would be filed but that they were not filed. The Petitioner said that he would not have pleaded if he had received the "information . . . [he] requested" from the motions. The Petitioner said the State's initial plea offer was twenty-five years at 85% service.

On cross-examination, the Petitioner testified that he heard the preliminary hearing testimony. He denied that counsel obtained a transcript of the preliminary hearing but agreed he and counsel discussed his confession. The Petitioner agreed counsel filed a motion to suppress the confession, which was denied by the trial court. The Petitioner said that he asked counsel to file an application for an interlocutory appeal but that counsel did not file it. Although the Petitioner denied speaking to Rocky White, whom the Petitioner identified as a jail inmate, the Petitioner agreed he and counsel discussed Mr. White's being a State's witness who would testify that the Petitioner admitted shooting the victim.

-4-

The Petitioner testified that he initially denied being with the victim on the day of the shooting but later admitted to the police that he shot the victim. He said that counsel initially mentioned "something about" twelve years at 30% service for manslaughter, that the State offered twenty-five years, that he rejected the offer, and that counsel returned with the eighteen-year offer. The Petitioner said counsel advised that eighteen years was the State's lowest offer. The Petitioner agreed that the trial judge advised him of his constitutional rights, including the right to a trial. He agreed that he told the trial judge that he understood his rights, that he understood the terms of the plea agreement, that he and counsel had discussed the offer, that he was satisfied with counsel's representation, and that he wanted to plead guilty.

Defense counsel testified that after the arraignment, he filed a motion for discovery, that the State had an "open file" discovery policy, and that he obtained documents and audio recordings of the Petitioner's police interviews. Counsel said that he provided the discovery materials to the Petitioner, who advised counsel of previous mental health problems, and that counsel filed a motion for a mental health evaluation. Counsel recalled that the motion was granted, that an initial evaluation was conducted, that the physician recommended an additional mental health evaluation, that a subsequent evaluation was conducted, and that the Petitioner was deemed competent to stand trial. Counsel said that, afterward, he filed a motion to suppress the police statement in which the Petitioner confessed to shooting the victim and that the trial court denied the motion. Counsel said that he filed a motion seeking an interlocutory appeal but that the Petitioner accepted a plea offer before the motion was heard.

Defense counsel testified that the State's original plea offer was much higher than eighteen years and that although he did not recall the terms of the offer, he did not dispute the Petitioner's testimony that the offer was twenty-five years at 85% service. Counsel said that he and the prosecutor discussed the Petitioner's pleading guilty to manslaughter but that the prosecutor rejected this and extended the eighteen-year offer.

Defense counsel testified that he did not represent the Petitioner at the preliminary hearing but that he reviewed the testimony. He said that although he did not recall filing a motion to have the hearing transcribed, he would have filed a motion if the Petitioner had requested a transcript and counsel had "deemed it appropriate." Counsel said the record would reflect whether he filed a motion.

Defense counsel said that the decision to accept the plea offer belonged to the Petitioner. Counsel said that he and the Petitioner reviewed the State's evidence and that the police statement in which the Petitioner admitted shooting the victim showed that the killing was committed during a "kind of heat of passion moment." Counsel said that "there was some defense there" but that the Petitioner weighed the options before accepting the offer. Counsel said that he and the Petitioner reviewed the discovery materials, which included photographs of the victim's apartment, and denied that he and

-5-

the Petitioner discussed any motions beyond what counsel filed. Counsel said he would have filed additional motions if the motions would have been warranted. He said that he did not personally speak to Mr. White but that he obtained Mr. White's academic records. Counsel recalled that Mr. White referenced in his police statement attending school with the Petitioner and that obtaining the records was important to the Petitioner. Counsel said that he obtained the Petitioner's records, as well, in an effort to ensure the Petitioner and Mr. White attended school together. He did not recall the Petitioner's asking him to obtain background information on the State's witnesses.

On cross-examination, defense counsel testified that if the Petitioner had wanted a trial, counsel would have been prepared. Counsel said that he and the Petitioner discussed possible defenses, although the Petitioner's confession limited the potential defense to "a heat of passion shooting." Counsel recalled that Mr. White's potential testimony would have been consistent with the Petitioner's confession, which showed that an argument about rent "got out of hand." Counsel agreed that even if the trial court had granted the defense's motion to suppress the Petitioner's police statement, Mr. White's testimony would have identified the Petitioner as the shooter, and the victim's girlfriend would have placed the Petitioner with the victim on the day of the shooting. Counsel stated that, on the day of the guilty plea hearing, the Petitioner did not indicate he lacked the ability to understand the proceedings and that the Petitioner wanted to plead guilty.

On redirect examination, defense counsel did not recall whether he spoke to Yolan or Yvonne Cates during his pretrial investigation. Counsel recalled that the discovery materials included telephone records but did not recall whether the records showed a discrepancy or provided for a defense.

The post-conviction court denied relief. The court reviewed the guilty plea hearing transcript and determined that the Petitioner freely, voluntarily, knowingly, and intelligently entered his guilty pleas. The court found the Petitioner stated that he was satisfied with defense counsel's representation, that he understood the proceedings, that he was guilty of second degree murder and of vandalism, and that he had not been forced, pressured, or coerced to plead guilty. The court found that the Petitioner asked the victim's family to forgive him for the killing. The court credited counsel's testimony and found that counsel did not provide deficient performance. This appeal followed.

The Petitioner contends that the post-conviction court erred by denying relief. He argues that he received the ineffective assistance of counsel because counsel did not file the various motions the Petitioner requested. The Petitioner asserts that if counsel had obtained information from these motions, he would not have pleaded guilty. The State responds that the post-conviction court did not err by denying relief. We agree with the State.

-6-

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The focus of the Petitioner's argument is that counsel should have but did not file motions to suppress "certain evidence," to obtain transcripts of the preliminary hearing and of witness statements to the police, and to require the State to identify a confidential

informant. The Petitioner does not elaborate but nonetheless believes counsel's failure to file these motions and to obtain information from them entitles him to post-conviction relief on the basis of ineffective assistance. However, the Petitioner fails to identify what information would have been garnered if counsel had filed the motions, and the Petitioner does not identify the evidence he thought counsel should have sought to suppress. Counsel unsuccessfully sought the suppression of the Petitioner's confession to the police, after obtaining and reviewing the discovery materials. The discovery materials contained the Petitioner's confession and the witness statements, including those from the victim's girlfriend, who placed the Petitioner with the victim on the day of the shooting, and Mr. White, who reported that the Petitioner confessed to killing the victim. The record does not reflect that the State intended to present additional witnesses who were not police officers if the case had proceeded to a trial. Although counsel did not recall requesting a transcript of the preliminary hearing, counsel reviewed the testimony. The Petitioner does not identify the confidential informant, and no testimony was provided at the post-conviction hearing regarding a confidential informant.

Furthermore, the guilty plea hearing transcript reflects that, upon questioning by the trial court, the Petitioner did not express concern about counsel's representation or counsel's failure to file various motions in an effort to obtain information about the case. The Petitioner denied that he had been pressured or forced to plead guilty and said that pleading guilty was the "best course of action." The Petitioner told the court that he understood the plea agreement and the rights he waived by pleading guilty, that he was satisfied with counsel's performance, that he had reviewed the discovery materials with counsel, and that he was entering his guilty pleas because he was guilty of the conviction offenses. The Petitioner, likewise, told the court that the State's factual recitations were "substantially correct" and that he shot the victim twice in the chest and damaged jail property. When provided the opportunity to ask questions, the Petitioner only inquired about when he would be placed in the custody of the Department of Correction.

We conclude that the record supports the post-conviction court's determinations that the Petitioner's guilty pleas were not the result of the ineffective assistance of counsel. The Petitioner is not entitled to relief on this basis.

The judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-8-